Final case of the morning is No. 16-10605, Moss v. Princip, and we'll hear first from Mr. Sebade. Thank you, Your Honor. It's an honor and a privilege to be here. May it please the Court, my name is Mazen Sebade for the appellants, Marko Princip and Brian Martin. Thank you for pronouncing my name correctly. Most people don't on first try. I think we've laid out the appellate argument in our briefing, but I'd like to take a moment to just explain, you know, overarchingly what this case really ended up being about. The plaintiffs in this case each claimed to have invested $1,500, and four years later were claiming $4.2 million in damages on a 60% interest of a partnership that was running a YouTube channel, a YouTube channel that the evidence at trial showed never earned more than $90,000 in a single year. Where I stand, $90,000 is an unbelievable sum of money to earn from a YouTube channel. I was shocked when I found out they could make even that much, but $4.2 million in damages is unsupported in the record. But before we even, so we believe this is a case of a runaway jury, but before we get there, we think there's a real problem here with subject matter jurisdiction. How many jurors were in the box? Six, I believe. I didn't try the case, but I believe it was six. I figured. The subject matter jurisdiction is a problem in this case. This case was removed. It went to two federal judges, and there's a former judge that tried it, but there's not anywhere in the record that anyone really contemplated subject matter jurisdiction, really until I was hired to take over the appeal after trial. We got the record on a Monday, and we filed our 12B1 motion on a Tuesday. It was denied, and under Rule 21, the partnership, which was the non-diverse party in this case, was dismissed, despite the fact that the partnership had been the main defendant all along. Damages were sought from the partnership. Receivership was sought over the partnership. Damages are obviously a derivative claim if the partnership isn't there, which makes the partner the real party in interest under Rule 17. I thought you were about to ask a question. You have a declaratory judgment requested and asked for as to the composition of the partnership, and injunctive relief over the management and composition of the partnership was sought at the beginning of the trial, the day that the case was removed, which is when we really should be assessing subject matter jurisdiction, and judgment was entered against the partnership on an injunction removing, divesting my clients of their partnership interest and control over the partnership after the partnership was already dismissed under Rule 21. So we have a bizarre set of facts here on a partnership that was clearly the real party in interest and was properly named as a defendant, but unfortunately for the parties in this case, destroyed diversity. To recap, the partnership is a citizen in every state in which its member partners are citizens. So when partners sue a partnership, there is no diversity. It's somewhat of a strange rule under the circumstances, but nonetheless, that is the law. And I don't think that part is denied. I think what really the issue has become is this Rule 21 dismissal. Rule 21 applies to the misjoinder of parties, not getting rid of parties for the convenience and sake of preserving jurisdiction because we already had a verdict. That was this Court's opinion in, for example, in the Bankston case. And in fact, the Bankston case, even though that wasn't technically a Rule 21 case, is sort of the inverse set of issues that we have here where the partnership was never made a party, and I think the parties implicitly knew that if they brought it in, it would have destroyed diversity. So this Court actually reversed the verdict and dismissed for lack of the partnership being there as a necessary part. So it's the same factual backdrop, different scenario on whether the parties needed to be there. I think that really gets rid of the case as far as I'm concerned. My clients are two young men who now have a $20 million judgment, a $30 million verdict reduced to a $20 million judgment that's not dischargeable, that's going to follow them around for the rest of their lives. They are virtually indigent. One now is a valet and the other one can't find work because of all the publicity over this case. They did sell the channel for several million dollars, didn't they? No, Your Honor. The plaintiffs claimed that the channel was worth millions of dollars, but there was no evidence to support that, and what the Court ordered was that our clients should give the channel over to them. What we argued in opposition to the injunction was, okay, if you're going to do that, then under Texas law you have to pay my clients for it. We made an argument for a judicial estoppel that the plaintiffs can't claim, even though they have any evidence, but they can't claim the channel is worth millions and millions of dollars and then say they owe nothing in reduction of the judgment in exchange for the divestiture of the channel, because we pointed out part of the judgment was future damages. Well, the plaintiffs aren't going to suffer future damages if the channel, 100 percent of the channel is given to them, so that should have been eliminated, plus the value of my client's ownership of the channel should also reduce the judgment, and we argued what that value was. All that was ignored. The injunction was entered. But I think the key point of that injunction right now is that it's entered against a partnership that was no longer a party, that should have been a party, and that obviously underscores our point of lack of subject matter jurisdiction because there's lack of diversity. I think that might be what Your Honor is referring to. But the channel wasn't actually sold or contracted. If I'll move on if the Court doesn't have any questions. If for some reason subject matter exists or for some reason Rule 21 rescued them, then we believe the verdict is still infirm because you have inconsistent, an inconsistent verdict, which this Court has found is evidence of a jury that's not really guided by the evidence. It's more guided by passion and prejudice. The standard is that, you know, this was a — our argument is this was obviously a special verdict. The Court instructed the jury to answer a series of questions about the facts of the case, and then by ushering the jury through, you know, if you answered yes to this question, now answer this question, now give us damages, that's the sort of normal pattern of a special — of a special verdict under Rule 49a. This Court held — has held that when you have a — I think it's Alvarez v. J. Ray McDermott, that's a 1982 case, that when you have a special verdict and the answers to the same factual questions or the answers to the factual questions are inconsistent, then, you know, that's — you can't enter judgment. It's an irreconcilable verdict, and there is no way — Why does it matter? Because they eventually elected their remedies. Well, Your Honor, I don't — I don't think that that's — I don't think that's the standard for the inconsistent verdict. I think the inconsistent verdict goes to whether or — because which — which measure of damages is correct. They elected the remedies under tort because it was bigger. The exact same question was put to the jury under the — under the contract number, so — I understand that, and your clients didn't object at the time the — the verdict was, you know, the instructions and the questions were issued, right? That's — that's true, and that's why — and to be fair, the actual instruction, the contract of royalty, is not even the correct instruction that should have been given, but I think that was waived because it wasn't objected to. Was it raised before the jury was discharged? Sorry, Your Honor? Was there — was the inconsistency that you assert in the Rule 49 answers raised before the jury was discharged? No, it was not, Your Honor, at least not — not as far as we can tell in the record. But this Court's decision in Alvarez v. J. Ray McDermott, which we cite in our reply brief, this Court held that when you have a special verdict, there's not a waiver issue because an inconsistency in — on the face of the verdict form or on the first case of the answers renders the actual verdict incoherent. How do you know — and this goes back to the — Judge Jones's question. How do you know which measure of damages is the correct one? You have a — you have a benefit of the bargain damages on one side that's 750,000. You have another one that's 2.1 million. They're, you know, supposedly the same damages. That incoherence is what needs to be cured. Yes, Your Honor. I guess I'm trying to think through it practically because the jury instructions, the jury charges are — are — are submitted prior to the jury going back to deliberate. Yes, Your Honor. And so whether you objected or not or whether the other side submitted the questions or not, you knew what the questions were. Yes, Your Honor. And so why wouldn't it have been apparent when you received the verdict with the written responses, why wouldn't it — why wouldn't it have been apparent then that there was something inconsistent about it? I think it probably, to a certain extent, was apparent, Your Honor. And again — But no one objected? No one caught it. Not the judge, not the plaintiff's lawyer. I didn't try the case. Not my predecessor, but not the defense lawyer. But — The problem is not the answer, forgive the jury gave. The problem is in the question you asked. Is that — I said the problem is — is a difference between a difficulty in — you asked the wrong question. I think both are a problem, but I think what we have to deal with is the question that was asked was the same and answered diametrically differently by the same jury. I understand that. And — oh, sorry, Your Honor. And so the fact that those are inconsistent, this Court has ruled, means a judgment should never have been entered. What are the damages for wrongful removal? I think normally when there's wrongful removal and someone files a motion for remand, there's usually just some attorney's fees that are awarded. Well, right. But just for that process. Here they never move to remand. I mean, if this is as straightforward as you say, these defendants let the case go through discovery and trial and verdict and appeal, and now you say it's plain as day that it was wrongfully removed. I agree, Your Honor. But the plaintiffs actually amended their complaint in federal court to assert diversity jurisdiction. They did not move to remand. I think — It's the defendant who removes based on diversity, right? That's true. But normally if a plaintiff says, no, I shouldn't be here, they don't amend their petition and start asserting diversity jurisdiction affirmatively, and they usually file a motion to remand in a pretty timely fashion. I think when it gets this far, I think there's a lot of blame to go around. You can't waive diversity, so — I agree, Your Honor. And that's why I'm here arguing it. I thought where Judge Jones was going was the fact that, well, we're so far along, what's the penalty to our side for bringing it up so late? And what I was trying to suggest is normally that penalty applies when someone brings it up right away. I think when it gets this far and two Federal judges, a former judge and a bunch of guys who normally practice in Federal court, nobody catches it. I'm suggesting there's enough blame to go around. But that's probably an issue for the district court potentially on remand. It happens. Certainly. We had an argument in this courtroom, as a matter of fact, some years ago in which a huge verdict had been returned. And it became apparent that it was incomplete diversity because there was a large group involved and they hadn't realized association membership. And we asked the question, you know, for our jurisdiction, and the lawyers picked themselves up off the floor. They realized that they didn't have anything. So that happens, and they were good lawyers. Certainly. But that doesn't deal with the problem. The problem is you either have the jurisdiction or you don't. I completely agree, Your Honor. And Judge Higginbotham is right that, you know, sometimes the most learned judges and the most learned lawyers can overlook something. I didn't say judges. In this case, there were a couple. The judges are just lawyers playing a different role. It's the best job in the world. You don't have to keep talking. You know, I was going to say, you know, we raise a lot of arguments. I think those are our two keystone arguments. I believe there's also, I think I started off and I would end with, you know, the damages number. There is zero evidence to support the damages number that came in. There's not even a scintilla. The jury's calculation was handwritten on the verdict form, as we noted, at $3 per CPM, which is a thousand views of the website. But there was absolutely no evidence to show that that was actually what was paid. And so, in fact, the defendant's own testimony said that, yeah, we've heard that it could be up to $3 per click, but that changes on a daily basis based upon traffic and a variety of other factors, which really undermines any inference. What's happened to the channel pending or the, what is it, I guess the channel pending litigation? The channel was transferred to the plaintiffs in June.  And the last we checked, the channel was actually driven into the ground. The viewership was reduced substantially. The revenue was reduced. So if this gets reversed and my clients get the channel back, I think we're going to have some accounting to do with the plaintiffs in order to figure out what they need to do for their own, you know, trusteeship over the channel. But I think we leave that for another day. Fifth, sixth, or seventh litigation? I'm sorry, Your Honor? Will that be litigation number five, six, or seven? That's a good question. I think I've lost count. So there must be something at stake here. You know, Your Honor, I mean, the numbers are the numbers. I'm not sure why everybody thinks the channel is quite as valuable as it is. I think it produced some pretty significant revenue, no doubt, for a YouTube channel that you upload someone else playing a video game on. I, to this day, am floored that this is an actual business, but it is. I litigated a case where someone sold their online Star Wars identity for several thousand dollars, and that was a breach of contract case. And you'd be surprised how seriously the people really took that case. But it is what it is. I'm not saying that if they're That's okay. We don't need to gab. Your red light is on and you have time. Thank you, Your Honor. Thank you. May I approach? Yes, sir, Mr. Wyde. May it please this honorable court, Mr. Sabati, and let me say what a privilege and honor it is to appear in this esteemed legal institution. Pursuant to the court's instructions about preparing for oral argument, with your consent, I'd like to give you a summary of my oral argument first. First, this case involves direct claims between the two appellees and the two appellants as general partners in the Video Games YouTube channel. Direct claims, not derivative claims. Direct claims under Texas law, specifically the Texas Business and Organizations Code, Sections 152.211 and 152.011 allow for partners, general partners, to sue their fellow general partners. This is not a derivative claim where limited partners have a limited right to bring a lawsuit against a partnership. That is a huge issue in this case because eventually it will go to whether or not the partnership, as well as this one-member LLC game guide, which was owned by one of the appellants, whether or not there was total, complete diversity of jurisdiction. Secondly, the partnership was a dispensable party, as found by the trial court judge, and there is a long line of cases from the Fifth Circuit that I'm sure you are all aware of, starting with Cornell v. Banks in U.S. Supreme Court, 1825. Horn v. Lockhart, which was actually a Texas case in the Fifth Circuit prior to reorganization of the Fifth Circuit and went to the U.S. Supreme Court in 1873. Newman, excuse me, Provident Tradesman, 1968 U.S. Supreme Court case. Newman Green v. Alfonso Lorraine, U.S. Supreme Court, 1989. And Caterpillar, Inc. v. Lewis, U.S. Supreme Court, 1996. And lastly, Dittmer Hospital v. Hartford. This was a Fifth Circuit 2000 case. All of these cases, in summary, held that a nondiverse, dispensable party should be dismissed, especially in the latter stages of litigation, certainly after trial, verdict is received, judgment is entered, and appeal has actually been initiated. In fact, this court has the authority, pursuant from the U.S. Supreme Court, to dismiss a nondiverse, dispensable party. No. This court has that jurisdiction to do that at this stage in the proceedings. If I'm not mistaken, I believe that is from... The issue is indispensable. Yes. Yes. The reason the partnership is indispensable is because, if you'll notice in the bench book that we provided to you, as well as a copy to Mr. Sabati today, exhibits 1, 2, 3, and 11 in our book show you the partnership arrangement, first between this young man, Mr. Princip, and Mr. Moss, my client, and then Mr. Princip, the appellant, and Mr. Keating, my other client. No, I'm not sure we got that book. Oh, okay. Sorry. Thank you. Yes, Your Honor. May I continue? Yes, sir. Thank you. So let me explain to you how the agreements worked out. Basically, Mr. Princip needed money to create this channel. So he borrowed $1,500 from Mr. Moss and he borrowed $1,500 from Mr. Keating, and in exchange he sold 30% each of the channel to Moss and Keating. This is just like the old deal where the owner of the oil well sells 150% of the oil well. So it's really no different. Yes, Your Honor. And in fact, that's what this is analogous to. And my disagreement with Mr. Sabati, if you will, and reasonable minds may differ, is this young man, Princip, his client, struck oil. He found gold. In fact, in the record at EROA, Electronic Record on Appeal 1395, 1411, and 1441, this channel garnished 813 million views and had 3.3 million subscribers in 48 months. Replete throughout Mr. Princip's testimony, Mr. Princip's testimony, no less than on two dozen occasions in his direct and cross-examination, and I have the ERAs, if you would like me to read those to you, but during Mr. Princip's direct testimony, on no less than two dozen occasions, he represented to the Appellees, Moss and Keating, that he had a contract with a network that holds the channel, publishes the channel, for $3 per 1,000 views. In fact, he said between $3 and $3.50. At trial, I argued to the jury we were more than satisfied if they wanted to use the $3 figure. We did not attempt to overreach at trial. If you divide the 813 million views by 1,000, and by the way, at EROA, because I feel like a dinosaur arguing about a YouTube case, at EROA 1360, clicks per M, CPM, is clicks per 1,000. M is the Roman numeral for 1,000. That's why it's CPM. So if you divide the 813 million by 1,000, you get 813,000. If you multiply that times $3, that's $2.4 million. Each of my clients who own 30% of the channel were entitled to approximately $730,000, and the jury understood that they had been repaid about $5,000 each. So that's why the actual damages in this case per year was the 700, excuse me, and then that over four years, it was $725,000 times 4 for the four years is how you got to $2.8 million in actual damages. And the jury understood this math, and I think this Court is well aware that it's hard to get juries to understand the math, and with all due respect, Justice Higginbotham, there were seven people on the jury, not six. Well, 12 is a better number, but go ahead. Yes, sir. This is my second civil federal case in 12 years of private practice, and Judge Ed Kincaid seated a seven-person jury, and I said to him, Where are the other five jurors? And he said, Mr. Wyatt, I've known you for 25 years. Please sit down. So that's a decision, as you know, that's totally within the discretion of the trial court, and, of course, as a plaintiff, I concede to you I want to... I tried to get that changed. Yes, sir. Almost did it. I understand. It's above my pay grade, if you don't mind me saying. I think it was above mine, too. So the third argument in this case is that once the attention... Once it was brought to our attention by appellate counsel that there was not diversity, complete diversity with the partnership, and it's important to remember the two plaintiffs, appellees, each owned 30%, they were present at trial. How is it disputed? I mean, that's, you know, before you get to damages, that was the whole dispute in the trial. Yes, Your Honor. Ownership interests in the partnership. Well, and the only asset was really the channel, but this was a partnership, and, ma'am, if I could address your comment, the two defendants owned 20% each, and that's what it's documented by. But I thought they were saying that your fellows didn't own anything. That's what they said allegedly. See, that's my problem, because the grovelment of the case is the ownership shares in the partnership, and I don't see how you can decide that without the partnership being part of the lawsuit. But all four partners and 100% of the partnership interest was represented at trial by competent counsel. The partnership in this case, to quote Justice Frankfurter in his 1954 comment, is that, as you know, you have live plaintiffs or live litigants, human litigants, and you have nonhuman or artificial litigants. This partnership does not exist on any books in any state secretary... Well, are you going to give them back the video channel, the YouTube channel, and just accept a dollar damage award? We have attempted, yes, I would like to do that, and we have attempted to do that, but because Mr. Martin, the plaintiff, or the appellant in this case, who was almost sanctioned by the trial court judge, if you will, after the verdict came, he has engaged in complete disparagement of my clients and the channel to so many of these networks, they will not touch this channel until this court renders a decision. So it's become to the point that the channel cannot be sold because it has a cloud hanging over it, namely this appeal. And I have encouraged my clients because I will tell you I'm here on a pro bono basis, and I'm owed a lot of money in litigating this case, and the reason my clients aren't here is they are both practically destitute. But do you agree that you sought relief that involved the partnership? No, not until the jury... No, Your Honor, excuse me. You didn't ask for a declaratory judgment confirming the partnership? Well, we did, but the problem is is the trial court would never rule. The trial court never held a hearing on it. All right, so you did seek some relief involving the partnership. Yes, to have our percentage of the partnership recognized, if you will, as a matter of law, but the trial court never addressed it. They refused to. And you can't make the... ...declaratory judgment about the ownership. Well, no, that didn't come until after the jury verdict in document number 86 in your... ...judgment, paragraph 7. Yes, but that was after... There was never any declaratory relief granted, no hearing held and no declaratory relief granted. Well, I just asked you whether or not you sought some relief involving the partnership. The answer to that seems to be yes. I'm sorry? The answer to that question seems to be yes. Yes, yes. I apologize if you thought I was misleading you. We tried to get our ownership resolved prior to trial in pretrial litigation, and the trial court would never take the issue up. So, ultimately, after the jury confirmed there was a partnership, after the jury confirmed 30% and 30% to the two plaintiff appellees, and 20%, 20%... Based on the partnership agreement. Based on those documents, yes. Yes, before you... We're talking about the partnership again. Well, yes, but, again, I want to clarify this. This is an artificial entity that is not actually on file anywhere. It just... It's kind of like the cloud that you hear people talk about, the cloud. You know it exists out there, but it only... No, we know that you sought relief against the partnership. Well, but... All four partners were in the room. All four partners. So this entity... What rights does this entity have other than spoiling diversity? We're dealing with two people that own 20% each that refuse to acknowledge the 60% ownership of the other two. And back to the Texas Business and Organizations Code, you have general partners that are allowed to sue general partners without destroying or without suing the partnership. The only reason the partnership was named was, first, they removed it to federal court, not us, and, two, the partnership has to be included only because we weren't aware. We had not had the opportunity to conduct any discovery, and we were not aware of what else may be involved when the two minority partners had been running it for four years. So you know how that works. You plead the kitchen sink, and then you start throwing out parts of it, everything, including the kitchen sink, and then you start getting rid of it. And that's exactly what a very well-respected, not obviously an Article III judge, but a very well-respected trial court magistrate did, in this case, Judge Stickney. And so when Mr. Sabati brought this issue up about diversity, we moved to dismiss the non-diverse party, the partnership,  by all four partners throughout the entire amount of litigation. And he found, obviously, that the partnership, as well as this one-member LLC gang guide, was not... They were dispensable parties. They were... I apologize for not using the double negative, but they were dispensable. Was Paragraph 7 of the judgment ever vacated? I apologize, Your Honor, but which... What is that? Paragraph 7 is the one that declares the ownership interest. No, it's not vacated, and it wasn't until the jury answered the special interrogatories about whether the two minority partners should be removed as partners because of their wilfulness and their inability to cooperate with the majority. Those were special issues by the jury. So once the jury did that, the judge held a hearing prior to the entry of judgment, after the entry of judgment, whether or not they should be removed from the partnership. What I've got... Well, then you have the injunction, right? The... Yes. Two weeks before the judgment or two weeks after the judgment? Yes. And... But the injunction has not been vacated. No, because my clients now own 100% of the partnership based on, basically, the wilfulness to refuse to cooperate with the majority partners. You know, they struck oil, we financed the drill, they struck oil, and then they don't want to share the royalties. And unfortunately, under... Well, fortunately, under Texas law, there is a statutory scheme to remove partners who don't act in the best fiduciary interest of their fellow partners. I don't see how you can accomplish that in Federal court without having jurisdiction over the partnership. Well, because you have all four partners present, so you have jurisdiction, in personam jurisdiction, over the four individuals, and that would include representation of 100% of this alleged partnership, which, you know, there's not even any partnership documents except among the partners. There's no officers. There's no registered agent. This is a fictional... It's an entity that exists in law. The way the judgment says, and this is on the balance weighs heavily in plaintiff's favor because defendants are expelled from the partnership through this order and no longer have a stake in VG regarding public... So plaintiff's motion for a permanent injunction is granted and will be included in blah, blah. So... Because... Yes. The injunction expels two members of the partnership. Yes, because the jury found specifically that they willfully... they willfully breached their fiduciary duty of... towards the other two partners and they refused to cooperate post-verdict with the judge's orders about the two plaintiff appellees being the 30%... controlling 60% of the channel, really, which is the only asset to the whole partnership. Well, you just sent us these cases a couple days ago. Yes. And as far as direct claims between partners for economic damages goes... Yes. Was any of these three cases a matter of readjusting the interests in the partnership or were they more... for fraud or what? I would direct your attention, Your Honor, to... Excuse me. I would direct your attention to Hall v. Douglas, 380 Southwest 3rd, 860 at 872, Texas Appeal, Dallas 2012. And more to your point of question, there was a 2016 case decided by the First Court of Appeals out of Houston. Nguyen, N-G-U-Y-E-N, the Vietnamese spelling, versus Hoang, H-O... I've got it. Yes. Yes, Your Honor. 507 Southwest, or 2016, those were limited partners in Nguyen versus Hoang. That's a case where limited partners were allowed to seek injunctive relief. If a limited partner can seek injunctive relief against a partnership, then certainly general partners can seek equitable relief, and that is actually statutorily allowed under the Business and Organizations Code. But the point is, if they were getting equitable relief against the partnership, then the court had to have jurisdiction over the partnership. I would respectfully disagree with you. They were getting equitable relief against the two minority partners by dispelling them from the entity, not the partnership. And that's what happened in this case or in the Nguyen case? In this case. All claims were between the partners. There was never any claims filed against a quote-unquote partnership. It just happened to be named in the complaint. That's it. I see the yellow light. May I have a moment to conclude? Lastly, Mr. Maz... So complete diversity existed because after the judge, in his order, Document 86, excuse me, 84, disposing of the non-diverse parties in his final judgment in 86, now you have complete diversity of jurisdiction under 1332A because you have one plaintiff from Illinois, one from North Carolina, one from Texas, and one defendant from Texas and one defendant from California. So now you have complete diversity of jurisdiction, and you will,  Who removed the case? The Texas defendant? Who removed the case? The Texas defendant and California defendant removed it from state court to federal court against the plaintiffs from North Carolina and Illinois, which is odd in and of itself. Well, that's also... You don't get to remove in your own state. Right. Well, like I said, and I will tell you this, knowing I know my red light's on, may I have a moment to conclude? Thank you. I would like to bring the court's attention to Caterpillar v. Lewis and Newman Green, which cited this policy. Imposing unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention is why this court has the express authority, just like the trial court, to obviously remove a non-diverse party in the case, much like you cited about the lawyers falling on their floor once you broached that issue with them, Justice Higginbotham. With that, thank you so much for your time and attention. It's been a true privilege and honor to be here today. God bless each one of you, and God bless this court. Thank you. Mr. Sebade, Roberto. Yes, Your Honor, thank you so much. May it please the court, many of the authorities that were recently raised by Mr. White in his letter were actually cited by us. The Texas Business Organization code provisions don't say there is a direct action. The code provisions he's talking about are the ouster provisions, and those ouster provisions are predicated upon wrongdoing to the partnership. In fact, if you look at the verdict form, which we cite on page 22 and 23, the ouster of the defendants in the injunction were predicated on questions, the answers to questions 19 and 20, which we recount. And, for example, the first one, the first point there is, did defendant engage in wrongful conduct that adversely and materially affected the video games YouTube channel partnership? And every one of the special interrogatories that the ouster was predicated specifically asked about damage to the partnership. So as Judge Graves asked, did they seek relief or questions involving the partnership? They absolutely did. It's all over the verdict form. Every action, every bit of relief that they sought and received had to do with the partnership. Of course it had to do with the partnership, but part of it was, you claim to sell me 30% of the partnership. Now you're denying it. 30% is worth X, and I'm going to sue your pants off. That's a personal action against that defendant, irrespective of how it comes out. And the judgment is just for amounts of money owed, I believe, except for paragraph 7. Is that not right? No, Your Honor, I would disagree with that, because the breach of contract claim that they would have would be different. The calculation of damages would be different, and you wouldn't have a breach of fiduciary duty claim, which is the actual remedy that they elected. You also wouldn't have an ouster claim, because what you don't have is actual membership in the partnership. You also wouldn't have a claim for future damages, because all you'd be asking for is to be recognized. There are so many ways in which what they brought was not a personal action to essentially enforce the sale agreement, which is what Mr. Wyde was suggesting was actually going on. In fact, a very similar circumstance arose in the Northern District of Texas in front of Judge Fitzwater. We cite the case. It's Moore — I call it the Moore case. I believe it's — What — what partner in the partnership was not present at court? I believe all four ostensible partners were present at court. But that was the issue that I was just raising in the Moore case, where you had the partners that mattered that were present. In fact, all the partners. But without the partnership, Judge Fitzwater dismissed the case for lack of subject or for lack of the addition of a necessary party. That was also the facts in the Bankston case, which we cite extensively there. The same argument that's being made here was made there. Look, everyone, all the parties necessary to afford relief are present. Well, that's not enough. It's the real party in interest that matters. That's Rule 17. That's also Texas law. It's the entity against which relief is sought and granted. Sorry, Your Honor? It's the entity against which relief is sought. Correct. Correct. They sought relief against the entity. They sought a — they spent — I believe Mr. Wyde misunderstood the question that Judge Graves was asking. They actually sought a receivership over the partnership. I'd like to — I know they sought all of that business, but just let me give you — you know, there are six paragraphs that precede paragraph seven about the respective ownerships. Yes, Your Honor. And one of them, for instance, says, because of the tort remedy election, the court enters judgment against Defendant Brian Martin on Moss's claim for exemplary damages pursuant to jury verdict question 27 and hereby orders that he shall recover exemplary damages in the amount from Brian Martin in the event of $4.2 million. That is a personal judgment  against the Defendant Martin. I agree, Your Honor. But Rule 17 says — Texas law says that's a derivative action because what they're seeing is their share of the revenues of the partnership, 60 percent of the revenues of the partnership. That's what the calculation that they put in, the $3 that the partnership got ostensibly for 813 million views that the partnership received. Well, I understand what you're saying, but it seems to me that's a legal argument that you could have raised in regard to the sufficiency of the jury issues. I don't think that changes the substantive issue, Your Honor, because the jury issues were put in while the partnership was still a party. They dismissed the partnership after all of this happened. They sought damages from the partnership. Now, they taxed it, but the case law also says, both Fifth Circuit, Northern District, and the Dallas Court of Appeals, including the Hall v. Douglas case that he just raised, it specifically says when you seek damages or enforcement of a partnership agreement, the partnership is a real party in interest under Texas law. The fact that they glossed over that and then kicked the partnership out later should not matter. Thank you, Your Honor. Appreciate it. ...way to conclude the week. Court will be in recess until the next time.